William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JENNIFER EAST,                                       :        ECF
Individually and on Behalf of All Other              :        1: 18 Civ. 04251 (GBD)
Persons Similarly Situated,                          :
                                                     :
                          Plaintiff,                 :
                                                     :
        -against-                                    :
                                                     :
VISITING NURSE SERVICE OF NEW YORK,                  :
MARKI FLANNERY, JESSICA CUMMINS,                     :
LORRAINE EARLE and JOHN DOES #1-10,                  :
                                                     :
                          Defendants.                :
--------------------------------------------------------------------X

---

**PARTIES' JOINT MOTION FOR COURT APPROVAL
OF SETTLEMENT OF PLAINTIFF'S CLAIMS ASSERTED UNDER THE
FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAW**

---

LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave. 15th Floor
New York, N.Y. 10017
212-286-1425
Attorneys for Plaintiff

**PARTIES' JOINT MOTION FOR COURT APPROVAL
OF SETTLEMENT OF PLAINTIFF'S CLAIMS ASSERTED UNDER THE
FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAW**

Plaintiff Jennifer East and  Defendants Visiting Nurse Service of New York ("VNSNY" or "the Company"), Marki Flannery, Jessica Cummings (improperly named in the Complaint as "Jessica Cummins") and Loraine Earle (collectively referred to as "Defendants") in this matter jointly move for approval of the settlement agreed to by the parties in this action asserting claims, *inter alia*, under the Fair Labor Standards Act ("FLSA") settlement and seeking the dismissal of this matter with prejudice.  A copy of the fully executed Settlement is attached as Exhibit A hereto.

For all of the reasons that follow, the parties respectfully request that the Court grant the instant application in its entirety on the grounds that the settlement in this FLSA action represents a reasonable compromise of a bona fide dispute and a fair distribution of the settlement proceeds.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Visiting Nurse Service of New York is one of the nation's largest not-for-profit providers of home health care.[1]  New Partners, Inc. ("New Partners") is the licensed home care service agency affiliate of the Visiting Nurse Service of New York.  Plaintiff Jennifer East is a former Home Health Aide Supervisor (HHA Supervisor) for New Partners.  Defendant Marki Flannery is the Chief Executive Officer of VNSNY, a position she has held since April 2018.  Defendant Jessica Cummings is employed by New Partners in the position of Director of Human Resources, and Defendant Lorraine Earle is employed by New Partners in the position of Associate Director.

---

[1] Defendant VNSNY disputes Plaintiff's contention that it was her employer.  At all times, Plaintiff was employed by New Partners, Inc., a separate and distinct legal entity from Visiting Nurse Service of New York.

On May 15, 2018, Plaintiff filed an action entitled *Jennifer East, individually and on behalf of all others similarly situated v. Visiting Nurse Service of New York, Marki Flannery, Jessica Cummins, Lorraine Earle and John Does #1-10*, Civil Action File No. 1:18-cv-04251, in the United States District Court for the Southern District of New York (the "Action").  In the Action, East alleged that she was improperly classified as exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. §§201 et seq., and the New York Labor Law, NYLL §§ 650 et seq., and therefore was improperly denied overtime pay and minimum wages.  Plaintiff further asserted claims for violations of the New York Wage Theft Prevention Act, NYLL §195, and for unjust enrichment and breach of contract.

Plaintiff's claims are based on her contention that she was "illegally misclassified as exempt from the FLSA."  (Complaint, ¶ 1.)  Plaintiff contends that, as a result of this misclassification, she "was not paid for all her hours worked and was not paid for her hours worked over 40 hours a week ('overtime hours') at time and one half her regular wages and at times was not paid for all her hours at the minimum wage rate."  (Complaint, ¶ 45.)  The Complaint alleges that Plaintiff was misclassified for "the period from May 11, 2012 to March 1, 2017." (Complaint, ¶ 34.)  Defendants VNSNY, Flannery, Cummings and Earle timely answered the Complaint on June 25, 2018.  Defendants dispute Plaintiff's allegations, and assert that Plaintiff was properly classified as exempt from the overtime requirements of the FLSA.  (See Answer, ¶¶ 34-53.)

Defendants further contend that, if Plaintiff prevailed on her overtime claims, she could recover only unpaid half-time premiums (rather than time-and-a-half) for hours worked in excess of 40 in a workweek.  Finally, Defendants note that Plaintiff was reclassified as an exempt employee in December 2016, and thus her damages are cut off as of that date.

Throughout this litigation, counsel for both parties vigorously pursued their respective positions and the rights of their clients.  By Order dated June 27, 2018, this Court referred this Lawsuit to mediation before scheduling the initial Case Management Conference.  During a day of mediation on August 28, 2018, and subsequent multiple communications between counsel, the parties engaged in good faith, arms-length negotiations and agreed to a settlement of $30,000, of which $19,510 will be paid to Plaintiff, $10,000 will be allocated to attorneys' fees, and $490 will cover litigation expenses.  Furthermore, the parties have agreed to the terms of a written settlement agreement ("Settlement Agreement").  The parties believe that this settlement is fair, reasonable, and in the best interests of both parties.

## II.    THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

Rule 41(a)(1)(A) provides in relevant part that:

> Subject to … any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
>
> (i)  a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>
> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed.R.Civ.P. 41(a)(1)(A).  The FLSA is an "applicable federal statute," and claims under the FLSA may not be dismissed solely through the filing of a notice or stipulation of dismissal.  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).  Rather, the settlement of FLSA claims requires approval of a district court or the Department of Labor.  *Id.* at 206.

Courts will approve FLSA settlements "when they are reached as a result of contested litigation to resolve *bona fide* disputes."  *Willix v. Healthfirst, Inc.*, No. 07-CV-1143 (RER), 2011 WL 754862, at * 5 (E.D.N.Y. Feb. 18, 2011); *see also Johnson v. Brennan,* No. 10-CV-471, 2011 WL 4357376, at * 12 (S.D.N.Y. Sept. 16, 2011) (court approval of FLSA settlement is appropriate "when [the settlement is] reached as a result of contested litigation to resolve *bona fide* disputes.").

"The ultimate question is whether the proposed settlement reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) quoting *Mosquera v. Masada Auto Sales, Ltd.*, 09-CV-4925 (NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011).  There is a "strong presumption" that a settlement reached between the parties in an FLSA action is fair and reasonable.  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013);  *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 JLC, 2015 U.S. Dist. LEXIS 151144, at *12 (S.D.N.Y. Nov. 6, 2015) ("I note as a threshold matter that courts generally recognize a 'strong presumption in favor of finding a settlement fair,' as they are 'not in as good a position as the parties to determine the reasonableness of an FLSA settlement.'") (citation omitted).

In "determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiffs range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).  Furthermore, courts will not approve an FLSA settlement agreement containing an "overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks*, 796 F.3d at 206 (internal quotations omitted).

4

As the court explained in *DeJesus v. PS Bros. Gourmet*, No. 15cv99, 2015 U.S. Dist. LEXIS 174785 (S.D.N.Y. Dec. 18, 2015), in order for a court to approve a settlement in an FLSA case it should be provided with sufficient information to examine the dispute and be satisfied that the settlement is fair and reasonable. Thus, as set forth below, an analysis of the relevant factors clearly demonstrates that the settlement in this case is a fair and reasonable resolution of bona fide disputes between the parties.

    **(A)**    **The Plaintiff's Range of Possible Recovery.**

Plaintiff's potential recovery depends on the monetary amount of her regular rate and overtime premiums, the number of overtime hours that she worked, the number of workweeks covered by her claims, and any offsets against overtime for premium pay on the weekends.[2]

    (1)    The Monetary Amount of Plaintiff's Regular Rate and Overtime Premiums

Plaintiff alleges she was paid on a salary basis for her work during the workweek, and was paid a per diem of "$200 per day for her work on Saturday and Sunday." (Complaint, ¶ 40.) Furthermore, Plaintiff claims that she was paid at the rate of between $17.039 and $19.4801 per hour. (Complaint, ¶ 38.) Thus, based on an average of the rates alleged in paragraph 38 of the Complaint, Plaintiff's regular rate was $18.26 per hour and her overtime premiums would be paid at $9.13 per hour.[3]

    (2)    Number of Overtime Hours Worked

---

[2] Plaintiff also asserted a claim under the New York Wage Theft Prevention Act, NYLL §195, for which the maximum recoverable damages are $10,000.

[3] Because Plaintiff's salary was intended to cover all hours worked, Plaintiff (if she had been misclassified) could likely recover only half-time pay. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010) citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 573 (1942) (when considering an employee earning a flat wage for fluctuating work hours, it was appropriate to determine "the employee's regular rate of pay for a given week ... by dividing the fixed weekly wage by the total number of hours worked in that week.")

Plaintiff claims that she worked "at least 45 hours during the five weekdays," an 8-hour shift on the weekend (for which she was paid a $200 per diem), and "at least 1 to 2 hours after the end of these weekend shifts." (Complaint, ¶¶ 39-40.)  Thus, Plaintiff concludes that she is entitled to overtime premiums for 17 hours per week.  (Complaint ¶ 41.)  Defendants dispute that Plaintiff worked 17 overtime hours per week.

(3)    <u>Number of Workweeks</u>

Based on her alleged misclassification as an exempt employee, Plaintiff's Complaint seeks to recover overtime premiums for the period from May 11, 2012 to March 1, 2017, a period of 250 weeks.  However, due to expected changes in the salary threshold for exempt employees, Plaintiff was reclassified as a non-exempt employee as of December 31, 2016.  Therefore, Defendant contends that Plaintiff may recover alleged damages only for a period of 242 weeks.

(4)    <u>Offsets for Premium Pay on Weekends</u>

Plaintiff contends that she was paid only a $200 per diem for her work on a Saturday or Sunday.  However, Defendant contends that Plaintiff was in fact paid up to $250 for her weekend per diems, with the amount dependent on whether she worked Saturday or Sunday.  On those weekends when she was paid $250 for a nine-hour day, Defendants argue that Plaintiff's per diem payments equate to $27.78 per hour.  Because that rate is more than 1.5 times Plaintiff's regular rate of $18.26 per hour, up to $85.66 could be offset against the overtime owed to her.[4]  See 29 C.F.R. § 778.203 ("Premium pay for work on Saturdays, Sundays, and other "special days") ("… extra compensation provided by a Premium rate of at least time and one-half which is paid for work on Saturdays, Sundays, holidays, or regular days of rest or on the sixth or seventh day of the workweek [] may be treated as an overtime premium for the purposes of the Act.")  The parties

---

[4] At her regular rate of $18.26 per hour, Plaintiff was entitled to $164.34 for a 9 hour day.  Thus, a $250 per diem paid Plaintiff extra compensation of $85.66.

6

dispute the number of occasions on which Plaintiff's per diem equaled $250. However, that analysis has the potential to offset Plaintiff's FLSA overtime premiums by more than 50 percent.

<u>Range of Potential Overtime Calculations</u>

First, if facts are as Defendants assert, *i.e.* Plaintiff was properly classified as an exempt employee, she would recover <u>nothing</u>.

Second, to the extent that Plaintiff could recover an overtime premium of $9.13 per hour (half time) for 17 hours per week over the course of 242 weeks, her potential recovery is:

$9.13     x     17 hrs     x     242 wks     =     $37,560.82

Finally, to the extent that Plaintiff could recover her entire overtime premium of $9.13 per hour for 17 hours per week, but that recovery is offset by $250 per diem for Saturday or Sunday work for each of the 242 weeks, her potential recovery is:

$9.13     x     17 hrs     x     242 wks     -     ($85.66 x 242 wks)     =     $16,831.10

Therefore, the agreed-upon settlement is fair and reasonable in light of the potential range of recovery and the risks attendant to each party should this case proceed through discovery and trial.

**(B)    The Settlement Will Enable the Parties to Avoid the Anticipated Burdens and Expenses of Litigation.**

As noted above, the precise amount which Plaintiffs could potentially receive at trial is a factor of the number of overtime hours worked by Plaintiff, and that issue is in dispute. (Complaint, ¶¶ 39-40; Answer, ¶¶ 39-40.) Because Plaintiff was classified as exempt from the overtime requirements of the FLSA and the NYLL, the parties did not maintain comprehensive records of her hours worked.

Developing the necessary evidence of Plaintiff's hours worked would require analysis of records reflecting the worked performed by Plaintiff on each individual day of the relevant time period. The document discovery in this case would be voluminous, and the documents obtained would have to be explained through multiple depositions of fact witnesses and analyzed by expert witnesses.

Therefore, the agreed-upon settlement is fair and reasonable in light of the burdensome and expensive discovery that would otherwise be required.

### (C)    The Seriousness of the Litigation Risks Faced by the Parties.

Both parties faced serious litigation risks in proceeding with this litigation. Whether Plaintiff's job duties qualified her for the Administrative or Executive exemption is a dispositive issue. That issue was in substantial dispute.

For example, Plaintiff alleged that, as a HHA Supervisor, she was not exempt from the overtime requirements of the FLSA and the NYLL because, among other things, she "did not have the right to hire or fire any employees and did not hire or fire any employees;" "did not have the right to direct the work of two or more employees;" she "did not interview any potential persons for employment and did not provide evaluations of any employees;" and she "did not have any independent discretion as her job simply required her to make sure that each patient had a health aide scheduled to serve the patient during the shifts assigned to the patient." (Complaint, ¶¶ 48-51.)

Defendants admitted that Plaintiff, as a HHA Supervisor, did not have the right to hire employees, but otherwise denied the allegations in paragraphs 48 through 51 of the Complaint. (Answer, ¶¶ 48-51.)[5]  At the mediation, Defendants produced documentary evidence allegedly

---

[5] An "employee employed in a bona fide executive capacity" is any employee: (i) compensated on

showing that Plaintiff at a certain period of time appeared to have disciplined and discharged employees.

As the court stated in *Gaspar v. Personal Touch Moving, Inc.*, No. 13-cv-8187(AJN), 2015 U.S. Dist. LEXIS 162243 (S.D.N.Y. Dec. 3, 2015), it is reasonable to reduce the potential recovery to the plaintiff by the risks involved in the litigation. 2015 U.S. Dist. LEXIS 162243, at *4 ("Plaintiffs' explanation of how the payments are reduced to account for litigation risks is also reasonable."). *See also Sampaio*, 2007 U.S. Dist. LEXIS 66013, at *3 (referencing "the respective burdens the parties face with respect to their claims and defenses" in approving an FLSA settlement).

Thus, the question of whether Plaintiff was an exempt employee involves a risk for both parties, and further supports the conclusion that the settlement in this case was fair and reasonable.

### (D)    The Settlement Agreement is the Product of Arm's-Length Bargaining Between Experienced Counsel.

One of the key indicators that a settlement is fair and reasonable is that the agreement is the product of arm's length bargaining. *Lliguichuzhca*, 948 F. Supp. 2d at 366 ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable"); *DeJesus*, 2015 U.S. Dist. LEXIS 174785, at *3. In this case, settlement discussions in this matter were initiated only after the Court ordered the parties to proceed to mediation through Francis Carling, Esq. Plaintiff and Defendants are represented by counsel, and the matter settled after

---

a salary basis at a rate of not less than $455 per week; (ii) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (iii) who customarily and regularly directs the work of two or more other employees; and (iv) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100. To qualify as a bona fide executive, an employee's primary duty must be the management of an enterprise or of a customarily recognized department or subdivision thereof. 29 C.F.R. § 541.100(a)(2).

arm's length negotiations over the course of weeks, with multiple offers and counter offers and multiple revisions to the settlement agreement prior to finalizing the agreement. Indeed, the matter did not settle at mediation because Plaintiff insisted on receiving additional documentation to allow her to evaluate the potential outcome of her case. After Defendants produced the documents sought by Plaintiff and her counsel, the parties exchanged multiple settlement demands and offers before agreeing on a settlement agreement ("Settlement Agreement") that was fully executed on October 17, 2018.

Plaintiff's counsel, William Coudert Rand, is an experienced attorney who has practiced law for approximately 25 years and has handled numerous wage-hour matters. (See biography of William C. Rand, attached as Exhibit B.) Similarly, lead counsel for the Defendants, Patrick G. Brady, has practiced law for approximately 28 years, and has represented defendants in many wage hour matters.

Therefore, it is clear that the agreed-upon settlement is the product of arm's-length negotiations between experienced counsel.

**(E)** **The Possibility of Fraud or Collusion.**

This settlement arises from a lawsuit brought by Plaintiff against Defendants, and the initial negotiations were supervised by an experienced mediator. Furthermore, as noted above, the amount of the settlement represents a reasonable compromise of the value of Plaintiff's claims. In light of the adversarial nature of the process, and the fact that both parties compromised their initial positions, it is clear that the settlement was not influenced by fraud or collusion.

Accordingly, the settlement is a fair and reasonable compromise of disputed claims.

**(F)    The Release is Reasonable and Narrowly Tailored to the Claims in This Action.**

The release language releases only wage and hour claims and thus is not the type of overbroad release disfavored by the courts.  See *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)) ("Courts in this District routinely reject release provisions that `waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'")  Rather, the language of the release applies to claims that were at issue in this case.  The release language specifically states that it applies to "any matter arising on or before the date of Plaintiff's execution of this Agreement relating to claims for the nonpayment or inaccurate payment of minimum and overtime wages, spread-of-hours pay, wage parity pay, all other wage and hour claims, wage notice claims, and wage statement claims…"  (Settlement Agreement, ¶ 6.)

Therefore, language of the release set forth in the Settlement Agreement is not an impediment to the Court's approval of this agreement.

## III.    THE LEGAL FEES TO BE PAID UNDER THE SETTLEMENT AGREEMENT ARE REASONABLE

The FLSA and NYLL both are fee-shifting statutes, entitling plaintiffs to recover their reasonable attorney's fees and costs.  See 29 U.S.C. § 216 (b); N.Y. Lab. Law § 198 (1-a).  The settlement includes payment of reasonable attorneys' fees and expenses equal to $10,490.00 (fees equal to $10,000.00 and expenses equal to $490.00).  The fees included in the settlement are fair and reasonable.

A.    **Negotiated Attorney's Fee Agreements Are Favored**.

"Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorneys' fees." *Andrews v. City of New York*, No. 10-CV-2426(SHS), 118 F. Supp. 3d 630, 634 (S.D.N.Y. 2015).   However, the Court must evaluate whether the requested attorneys' fees are reasonable. *Flores v. Food Express Rego Park, Inc.*, No. 15-CV-1410(KAM), 2016 U.S. Dist. LEXIS 11351, at *6-7 (E.D.N.Y. Feb. 1, 2016).

Negotiated attorneys' fee agreements are favored because federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. See *In re MDC Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement… , including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves."); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.")

In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this

> could be left entirely to the court for determination after the settlement.

*Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986). The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id*. "Markets know market values better than judges do." *Id.* at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." *Id.* at 572.

Here, such a negotiation was feasible, and was conducted. The settlement, including a fee payment, was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides and the magnitude of the fee the Court might award if the matter were litigated. Thus, the negotiated fee is entitled to a presumption of reasonableness.

### B.    The Fee is Fair Because it Equals One-Third of the Recovery.

The attorneys' fees in this case are one-third of the total settlement, and such a fee is reasonable and fair. As this Court has found previously, "[i]n this Circuit, courts typically approve attorney's fees that range between 30 and 33%." *Reyes v. 1944 First Ave. Deli Co., LLC*, No. 16-cv-8073 (KBF), 2017 U.S. Dist. LEXIS 189177, at *6-7 (S.D.N.Y. Nov. 14, 2017) (citing *Guzman v. Joesons Auto Parts*, No. 11-cv-4543(ETB), 2013 U.S. Dist. LEXIS 83342, 2013 WL 2898154,

at *4 (E.D.N.Y. June 13, 2013) (collecting cases);  see also, *Meza v. 317 Amsterdam Corp.*, No.

14-cv-9007, 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)

("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA

cases."); *Silverstein v. AllianceBernstein LP*, No. 09-cv-5904, 2013 U.S. Dist. LEXIS 179734,

2013 WL 6726910, at *9 (S.D.N.Y. Dec. 20, 2013); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467,

481 (S.D.N.Y. Apr. 29, 2013).

### C.    The Fee is Also Fair Based on a Lodestar Analysis.

The Settlement provides for the payment of Plaintiff's counsel fees in the amount of

$10,000.  The amount is reasonable based on Plaintiff's counsel's hours of work on the case, which

equal 55.1 hours.  Attached as Exhibit C are the time records of William C. Rand.  The legal fee

amount of $10,000 constitutes an hourly rate of about $181.48 per hour, which is extremely

reasonable given that Plaintiff's counsel, William C. Rand, Esq., regularly charges at least $495

for his time and given that he has over 20 years of litigation experience and specializes in FLSA

collective actions.  (See Exhibit B.)  The hours reasonably reflect the hours required to: (a) draft

and file a complaint; (b) draft Plaintiff's declaration; (c) review documents; (d) attend mediation;

(e) analyze documents and create a spreadsheet to estimate the damages of Plaintiff; (f) negotiate,

draft and execute a settlement agreement, and (g) draft a motion to the Court seeking approval of

the settlement.

Similar hourly rates have been found by courts in this District to be a reasonable rate.  See

*Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003 (BMC), 2015 U.S. Dist. LEXIS 56236,

2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (hourly rate for partners ranges from $300 to

$400 per hour); see also *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290,

314, 2015 U.S. Dist. LEXIS 65197, 2015 WL 2374515, at *19 (awarding $350 for a senior partner,

$200 for junior partners and associates, and $75 for paralegals); *Griffin v. Astro Moving & Storage Co. Inc.*, No. 11-CV-1844 (MKB), 2015 U.S. Dist. LEXIS 43326, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 U.S. Dist. LEXIS 21918, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400 and for senior associates range from $200 to $300); *Lema v. Mugs Ale House Bar*, No. 12-CV-2182 (PKC) (JO), 2014 U.S. Dist. LEXIS 41286, 2014 WL 1230010, at *6 (E.D.N.Y. Mar. 21, 2014) (awarding rates of $300 to $350 for partners, $125 to $225 for associates, and $75 for paralegals); *Fawzy v. Gendy*, No. 12-CV-5580 (BMC), 2013 U.S. Dist. LEXIS 144323, 2013 WL 5537128, at *1 (E.D.N.Y. Oct. 6, 2013) (hourly rates range from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants); *Jean v. Auto & Tire Spot Corp.*, No. 09-CV-5394 (ARR) (RLM), 2013 U.S. Dist. LEXIS 74570, 2013 WL 2322834, at *6 (E.D.N.Y. May 28, 2013) (rates for "attorneys handling FLSA cases . . . usually range from $300 to $400"); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (hourly rates range from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants).

Here, counsel for Plaintiff is requesting attorney's fees at a reasonable rate, below the average rate found to be reasonable by this District.

## IV.   <u>CONCLUSION</u>

Based upon the above, the Parties respectfully request that the Court approve the Settlement Agreement.  If the Court approves the Settlement Agreement, the parties will file a

stipulation of dismissal promptly after the settlement payments are paid, so that this action can be

dismissed with prejudice.

Dated: October 24, 2018

LAW OFFICE OF WILLIAM COUDERT RAND

s/William C. Rand

_____

William C. Rand, Esq.
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078
wcrand@wcrand.com